Ellison v. The State.

---

## ELLISON v. THE STATE.

1. A recognizance, conditioned that the party charged will appear and answer to the indictment to be preferred against him at a named term of the Court, and not depart therefrom without leave, may be extended at any subsequent term, if an indictment is preferred and found at that term.

2. When the parties acknowledge themselves bound in the sum of $500, to be levied severally and individually of their goods, &c., respectively, this is a joint and several recognizance, and not the several recognizance of each of the parties for that sum.

3. Under our statutes, which allow a *sci. fa.* without setting out the recognizance, the defendant is entitled to crave oyer of the recognizance upon which the proceedings are based, and to demur if there is a variance.

4. When a writ of error is sued out in the names of D. A. and others, it may be amended by the transcript of the record, and the names of the proper party or parties substituted.

5. When a judgment is erroneously entered severally against the parties bound by a joint recognizance, the entire proceedings as to all the parties will be reversed upon the writ of error sued out by one only, and the cause remanded, that its unity may be preserved.

Writ of Error to the Circuit Court of Dallas.

*Sci. fa.* upon a forfeited recognizance. The *sci. fa.* sets out the judgment on the recognizance, which recites, that at the March term, 1844, it appeared to the Court, that the defendant, (David A. Armstrong,) together with John Murphy, R. W. Armstrong, and Robert Ellison, had, before Zachary Whandby and Samuel Gilmer, justices, &c. acknowledged themselves to owe, and be indebted to Benjamin Fitzpatrick, Governor of the State of Alabama, and his successors, &c. in the sum of five hundred dollars *each*, to be levied, &c. to be void if the said David A. Armstrong, should make his personal appearance at the then present term of the Circuit Court, and answer a charge of the State against him, for an assault and battery, and thence continue from day to day, and from term to term, until discharged by due course of law. It also recites, that the defendant having been called to answer said charge, and failing to appear, a judgment *ni si* was rendered against David A. Armstrong, John Murphy, R. W. Armstrong, and Robert Ellison, for five hundred dollars each, the amount of their recognizance, so forfeited as aforesaid. The *sci. fa.* was made known to Murphy, R. Armstrong and Ellison, and as to D. A. Armstrong was returned not found.

The defendants served with process appeared, craved oyer of the recognizance, and judgment, and then demurred for a variance. This demurrer was overruled, and they then pleaded—1. *Nul tiel record* as to the recognizance set out in the *sci. fa.* 2. The same as to that set out in the judgment *ni si.* 3. The same plea as to the judgment. Judgment final was rendered for the State, that it recover the sum of five hundred dollars each.

The recognizance was produced, under the pleadings, and sets out, that the recognizors acknowledged themselves, held themselves firmly bound, &c. in the sum of five hundred dollars, to be levied severally and individually, of their goods and chattels, lands and tenements, respectively, if the said David A. Armstrong should make default in the condition of the recognizance. That con-

dition is, that the said David A. Armstrong should make his appearance at the fall term, 1843, of the Circuit Court, to answer, &c., and do what shall be enjoined by said Court, and not depart therefrom without leave.

All the parties against whom judgment was rendered, join in the writ of error, or rather it is sued out in the name of D. A. Armstrong, *et al.*

It is now assigned as error—

1. That the judgments should have been for the defendants, on the demurrer, and on the pleas of *nul tiel record.*

2. That the judgment, if one could be rendered upon the *sci. fa.* ought to be joint, for five hundred dollars and not several.

When the cause was called for argument, the Attorney General moved to dismiss the writ of error—1st. Because D. A. Armstrong is the plaintiff in the writ, and no judgment is given against him. 2. Because those against whom judgment is given, cannot sue out a joint writ. The counsel for the defendant moved to amend the writ, so as to make it correspond with the record, and if necessary to make Ellison the plaintiff.

EDWARDS, for the plaintiff in error, argued, that the recognizance was only for the sum of $500, and that sum only could be recovered by the State. The judgment therefore should be joint, though it may be levied of the several goods, &c.

ATTORNEY GENERAL, contra, cited Goodwin v. The Governor, 1 S. & P. 465 ; Howie and Morrison v. The State, 1 Ala. Rep. N. S. 113.

GOLDTHWAITE, J.—1. If we are to understand from the record, that *oyer* was given of the recognizance, then all the questions presented here, arose upon the demurrer ; but if it is to be understood otherwise, they must be considered in the examination of the evidence offered to sustain the issue of *nul tiel recognizance.* When the recognizance is inspected, we find, that the recognizors bound themselves, that David A. Armstrong should make his personal appearance at the fall term of the Circuit Court of Dallas, for the year 1843, to answer to a charge of the State, for an assault and battery, upon one David Armstrong; and further, to do what should be required by that Court, and

that he should not depart therefrom without its leave. At that term of the Court, an indictment for that offence was returned by the grand jury, but no proceedings on the recognizance, or against the recognizors, was had until the spring term, 1844, when, the principal being called, and not appearing, a judgment *ni si* was rendered against each of the parties to the recognizance for the sum of $500.

It is now insisted, that the recognizors not having been called to produce their principal, at the fall term, 1843, were virtually discharged from all liability to do so at a subsequent term. It is said by Hawkins, that if persons be bound by recognizance for the appearance of one in the King's Bench, on the first day of the term, and that he shall not depart till he shall be discharged by the Court; and afterwards a *nolle prosequi*, as to the particular charge, upon motion, is entered, and another is exhibited, on which the defendant is convicted, and refuses to appear in Court, after personal notice, the recognizance is forfeited; for being express, that the party shall not depart till he be discharged by the Court, it cannot be satisfied unless he is forthcoming, and ready to answer to any other information exhibited, while he continues not discharged, as much so, as to that which he was particularly bound to answer to. [2 Hawk. 173.]

Our practice, in misdemeanor cases, is supposed to differ from that pursued in England, inasmuch as the trial is always had when the defendant is present, and he is considered in strict custody as soon as placed on trial; but even with this difference in practice, the quotation from Hawkins is conclucive to show, that the recognizors are bound to produce their principal, to answer the charge, and that they are not released by the omission to call out the recognizance at the term at which the indictment is found. No injury can ever arise to the recognizors, as they are entitled at any time to surrender their principal, in discharge of the recognizance. [Clay's Dig. 450, § 35.] Whether the recognizance would continue in force, without some special order, when no indictment was returned, at the proper term, is a question not involved in this case; nor is it supposed the decision made in Goodwin v. The Governor, 1 S. & P. 465, where a point somewhat similar to that just adverted to was ruled, has any important bearing on the matter just examined; on this, our conviction is, that

that the recognizance could have been properly estreated at the spring term, 1844, and possibly also, at a period more distant.

2. With respect to the variance which is supposed to exist between the recognizance produced in evidence, and that described in the judgment *ni si*, we think the objection well taken. By the recognizance, the parties signing it admitted themselves bound in the sum of $500, and this cannot be extended so as to make it the several engagement of each of the recognizors to pay that sum four several times. The words which follow the statement of the sum for which they admit themselves to be bound, merely show, that it was to be levied of their several, and respective, goods, &c.

3. It is not very material to this case, whether the judgment below is reversed, on the ground that the demurrer should have been sustained, or that the issue of *nul tiel recognizance* should have been decided for the defendants ; but as the question of practice is one which must frequently arise, it is proper to give it a brief consideration. We have a statute which dispenses with the recital of the recognizance in the *sci. fa.* when a judgment *ni si* has been entered ; in which case it is " sufficient to recite the judgment *ni si*, and the term of the Court at which it was rendered ;" and to conclude by stating, that unless the defendant appears and show cause to the contrary, judgment final will be entered up. It also provides, that no other averment, or statement, shall be necessary to the validity of the notice. Another section of the same act, provides, that a variance in setting out a copy of the bond, or recognizance, or judgment *ni si*, shall not vitiate the proceedings, unless it be a substantial variance. [Clay's Dig. 481, § 29, 30.]

This statute was evidently intended to simplify the proceedings by *sci. fa.* and render them less subject to exception, than they had been previous to its enactment. It is certainly entitled to be liberally construed, but not in such a manner as to take away from the defendants, who are called on to show cause, the right to make a substantial variance apparent to the Court. Under the law, as it was before the statute, the recognizance was always set out, according to its legal effect, and the defendants were entitled to plead *nul tiel recognizance*, either when there was no record of the judgment, or of the recognizance, or it was untruly stated in the *sci. fa.* [Green v. Ovington, 16 John. 55. The

statute does not affect to take away this right, yet it is difficult to perceive how a defendant can plead *nul tiel record*, or *nul tiel recognizance*, when the plaintiff has not averred the existence of any such proceedings. As there must be some mode, by which the plaintiff can be forced to produce the proceeding upon which he grounds the process and judgment *ni si*, it seems in accordance with correct principles, that the defendant may crave *oyer* of the recognizance, and when it is given may demur. Both means were resorted to here, by the defendants, and without asserting that the plea of *nul tiel recognizance* is improper, we consider the craving *oyer*, and then demurring for the variance, is entirely proper. The judgment on the demurrer should have been rendered for the defendants.

4. Since the decision of Howie and Morrison v. The State, 1 Ala. Rep. 113, the statute authorising amendments of writs of error, has been passed; and though the writ here is sued out in the name of D. A. Armstrong and others, without naming them, we think that even such a case is within the statute, as the record furnishes the names of those who might sue out the writ. [Clay's Dig. 312, § 39.] As the counsel indicates, the defendant Ellison is the party suing out the writ in this case, it will be amended, so as to make his name appear as the sole plaintiff.

5. There is yet another difficulty in the case, which grows out of the peculiar nature of those proceedings, in which a number of parties are before the Court jointly, until the moment of final judgment, and when, by that judgment, the proceedings assume a several character. In ordinary cases, when the judgment should be, and is several, the suing out the writ of error, by one, and the reversal or affirmance of the judgment does not affect the judgment against any other. Such was the case of Howie and Morrison v. The State, 1 Ala. Rep. 113. But the reversal of the judgment as to Ellison in this case, without reversing as to other recognizors, would leave them severally liable, each for the sum for which a joint judgment should have been rendered. Under the decision made in Robinson v. The State, 5 Ala. Rep. 706, it is probable the reversal of the judgment alone, as to Ellison, would not create a discontinuance of the proceedings against the other defendants; but it would place the entire cause in a condition not contemplated, either by the prosecutor or the defendants. The harmony and unity of the proceedings will be best secured,

by reversing the judgment as to all the parties, R. W. Armstrong and Murphy, as well as Ellison, and remanding it to the Circuit Court, with instructions to amend the judgment *ni si*, and award a new *sci. fa.* that further proceedings may be had upon it, not inconsistent with this opinion.

Reversed and remanded.